IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| SEGAN LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  11-670-GMS |
| | ) | |
| ZYNGA INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

## I.   INTRODUCTION

On July 29, 2011, the plaintiff Segan LLC ("Segan") initiated the instant action against

the defendant Zynga, Inc. ("Zynga") alleging that several Zynga games infringe U.S. Patent No.

7,054,928 ("the '928 patent"). (D.I. 1.)  Segan filed an amended complaint on October 13, 2011

(D.I. 14). Presently before the court is Zynga's Motion to Transfer to the Northern District of

California pursuant to 28 U.S.C. § 1404(a). (D.I. 28.) For the reasons that follow, the court will

grant the motion.

## II.   BACKGROUND

Segan is a New York limited liability company with its principal place of business in

Long Island City, New York. (D.I. 14, ¶ 1.) Segan is the owner by assignment of '928 patent,

which names Marc Segan and Gene Lewin as joint inventors. (*Id.*, ¶¶ 9, 10.) Zynga is a Delaware

corporation with its principal place of business in San Francisco, California. (D.I. 29 at 2.)

The '928 patent is generally related to online recreational games involving a user device,

a service provider, and a target website, all in communication with one another. (*Id.* at 3-4.)

Segan alleges that Zynga has infringed the '928 patent by making, using, selling, offering for sale, and/or importing into the United States a variety of computer applications covered by the '928 patent, including but not limited to, Café World, CityVille, Empires & Allies, FarmVille, FishVille, FrontierVille, Mafia Wars, PetVille, Treasure Isle, YoVille and Zynga Poker (collectively, the "Accused Games"). (D.I. 14, ¶¶ 15, 22.)

## III. STANDARD OF REVIEW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Under this provision, a district court may exercise "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). The purpose of transfer is to protect litigants, witnesses, and the public from the unnecessary waste of time, energy, and money. *See Virgin Wireless, Inc. v. Virgin Enters. Ltd.*, 201 F. Supp. 2d. 294, 299 (D. Del. 2002) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

The court undertakes a two-step inquiry in order to resolve a motion to transfer. "The court first asks whether the action could have been brought in the proposed transferee venue and then determines whether transfer to a different forum would best serve the interests of justice and convenience." *Smart Audio Techs., L.L.C. v. Apple, Inc.,* 910 F. Supp. 2d 718, 724 (D. Del. 2012). At each step, the defendant has the burden to demonstrate that a transfer is appropriate, *Jumara*, 55 F.3d at 879-80, and "unless the balance of convenience of the parties is *strongly* in favor of the defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel*

2

*Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

With regard to the second step of the inquiry, where court considers whether transfer would best serve the interests of justice and convenience, the Third Circuit has instructed district courts to look to the various private and public interests protected by § 1404(a) rather than to any "definitive formula." *Jumara*, 55 F.3d at 879. The private interests may include:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses -- but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (citations omitted). And the public interests may include:

> the enforceability of the judgment: practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (citations omitted).

## IV. DISCUSSION

Segan does not dispute Zynga's assertion that the present action could have been brought in the Northern District of California. (D.I. 29 at 8; 33 at 7 n.2.) Thus, the court proceeds to the second step of the transfer analysis -- weighing of the *Jumara* factors.

The parties have both chosen legitimate forums in which to pursue the present litigation. Segan has chosen to file suit in a district where it is neither physically located nor legally incorporated. Therefore, its forum choice is accorded increased weight in the analysis, but less

3

than paramount consideration. *See Linex Techs., Inc. v. Hewlett-Packard Co.,* No. 11-400-GMS, 2013 U.S. Dist. LEXIS 1924, at \*10 (D. Del. Jan. 7, 2013) (citing *In re Link_A_Media Devices Corp.,* 662 F.3d 1221, 1223 (Fed. Cir. 2011)). Zynga chose its principal place of business, which is also a traditional and legitimate venue. However, plaintiffs have historically been accorded the privilege of choosing their preferred venue for pursuing their claims; the court therefore declines to elevate Zynga's choice of venue over that of Segan. As such, this factor weighs slightly against transfer.

"[A]s a matter of law, a claim for patent infringement arises wherever someone has committed acts of infringement, to wit, 'makes uses offers to sell, or sells any patented invention' without authority." *Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. 2012) (quoting 35 U.S.C. §271(a)). This factor is generally neutral in a patent infringement action where the defendant operates on a national level as the infringement can be viewed as occurring in all districts. *Smart Audio*, 910 F. Supp. 2d at 730. Here, Segan argues that Zynga indirectly infringed the asserted patent by inducing its customers to use its products. (D.I. 14, ¶ 22.) While allegedly infringing acts may have taken place in Delaware, they do not substantiate a closer connection to Delaware over any other forum.

Further, the court has acknowledged that infringement claims have deeper roots in the forum where the accused products were developed. *Smart Audio*, 910 F. Supp. 2d at 730. Segan contends that Zynga's past connection to neighboring Maryland gives rise to a closer tie to Delaware. The court is not persuaded. While FrontierVille, one of the eleven Accused Games, was partially developed in Zynga's Baltimore office, (D.I. 33 at 15), Zynga transitioned FrontierVille's development from Baltimore to San Francisco in December 2010, seven months

before Segan filed this action, and Zynga later closed the Baltimore office, (D.I. 35 at 4 n.2; D.I. 36, Ex. M). Moreover, Zynga's Accused Games have a closer connection to California because most of them were designed, developed, engineered, and marketed at its San Francisco headquarters. (D.I. 29 at 10-11.) Thus, this factor weighs slightly in favor of transfer due to the significant development activities at Zynga's San Francisco offices.

In evaluating the convenience of the parties, the court considers: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Smart Audio*, 910 F. Supp. 2d at 731 (citation omitted). Here, neither party has a physical presence in Delaware -- Segan, the patent owner, is located in New York and Zynga is located in California. Segan identified a single party witness likely to testify at trial -- Mr. Segan himself.[1] On the other hand, Zynga identified thirteen employees in San Francisco, an employee in Oregon, and an employee in India as potential witnesses. (D.I. 35 at 6.) Accordingly, all of the parties will need to travel for trial if the case remains in Delaware, though Segan's burden would be less. In contrast, transfer to the Northern District of California would significantly reduce Zynga's logistical and operational costs, but increase Segan's travel costs. Unfortunately, the court has not been presented with enough information to fully assess the "relative ability of each

---

[1] Segan has also identified three other potential third-party witnesses -- former employee/co-inventor Gene Lewin and the two original prosecuting attorneys. (D.I. 33, Ex. A, ¶ 14; D.I. 14, ¶ 8.) However, these three individuals do not affect the court's "convenience" balancing analysis because they are not Segan's employees, and they are not third-party witnesses that reside within the subpoena power of either the District of Delaware or the Northern District of California. *See Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*, C.A. No. 12-139-GMS, 2013 U.S. Dist. LEXIS 90847, *16-17 (D. Del. June 28, 2013) (finding that the location of third-party witnesses outside the subpoena power of either district irrelevant to the "convenience of the witnesses" *Jumara* factor).

party to bear these costs."[2] As such, the court is left simply with the knowledge that an adverse

transfer decision would subject both sides to some degree of inconvenience. However, Zynga is

a Delaware corporation, and the court has recognized that an entity's "decision to incorporate in

Delaware suggest[s] that the inconvenience of litigating here is somewhat less than the court

would ordinarily presume it to be." *Linex Techs.*, 2013 U.S. Dist. LEXIS 1924, at *15. Thus,

having considered each element of this *Jumara* factor to the extent possible, the court concludes

that it is neutral.

Considering the convenience of the witnesses, neither party has identified any nonparty

witnesses that would actually be unavailable for trial. *See Jumara*, 55 F.3d at 879. However,

Segan's Amended Complaint alleges that nonparty companies, such as, Facebook, Yahoo, and

Google, satisfy the '928 patent "target website" claim element. (D.I. 14 at ¶¶ 15, 23, 24, and 27;

D.I. 33-1, "Segan Decl.," ¶¶ 7, 9.[3]) Each of those nonparty companies is headquartered in

Northern California. (D.I. 29 at 13.) As such, they are beyond the reach of the court's subpoena

---

[2] Segan notes that Zynga is a large entity that had revenue of $1.28 billion in 2012 and total assets worth $2.58 billion, (D.I. 33 at 13), but Segan did not provide the court any evidence of its financial condition. Zynga's sizable financial resources "do not blind the court to the inevitable costs and disruptions that cross-country litigation imposes." *Linex Techs.*, 2013 U.S. Dist. LEXIS 1924 at *13. Further, the fact that Segan is a smaller company consisting of two members and no employees does not automatically tip this factor in its favor. *See Joao Control & Monitoring Sys., LLC v. Ford Motor Co.*, C.A. No. 12-1479-GMS, 2013 U.S. Dist. LEXIS 118299 at *12 (D. Del. Aug. 21, 2013) (finding a New York-based plaintiff/inventor had "sufficient financial resources to litigate in [Michigan]," where the plaintiff had previously sued the much larger defendant in California). Here, Segan is a sophisticated business entity that has negotiated intellectual property license agreements with California-based companies, such as, Disney, Lucas Films, Nickelodeon, Mattel, and Fisher Price. (D.I. 33-1, "Segan Decl.," ¶ 4.) Although the burden of negotiating license agreements is considerably less than patent litigation, Segan's inconvenient travel argument is undercut by the fact it conducts business in California. Moreover, Zynga aptly notes that Segan is represented by an international law firm with locations in California. (D.I. 35 at 5 n.3; D.I. 14.)

[3] Mr. Segan states that "the '928 patent covers a system that includes, *inter alia*, or a user device, a target website, and a service provider" and that the "target website . . . may include, for example, a website such as Facebook or Yahoo as set forth in the Amended Complaint."

power, yet important to resolving infringement. Additionally, Zynga provided the court with declarations Facebook, Yahoo, and Google submitted in prior Delaware actions that state litigation in Delaware would be inconvenient for their employees because the vast majority of their operations are based in California. (D.I. 35 at 7; D.I. 30, Exs. E-G.) Accordingly, the court finds this factor weighs heavily in favor of transfer because the Northern District of California can exercise subpoena power over most of the nonparty companies, but Delaware cannot. *See Linex Techs.*, 2013 U.S. Dist. LEXIS 1924 at \*18 (giving weight to "convenience of witness factor" when "likely witnesses reside beyond the court's subpoena power and . . . there is reason to believe those witnesses will refuse to testify absent a subpoena.").

For location of books and records factor, the court has acknowledged that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Smart Audio*, 910 F. Supp. 2d at 732 (citation omitted). And although technological advances have made transportation of electronic evidence far less onerous, the court "cannot simply ignore the location of the relevant books and records." *Id.* (citing *In re Link_A_Media*, 662 F.3d at 1224). As all the documents relating to the design and sale of the Accused Games, including the highly sensitive source code, are located in San Francisco, (D.I. 29 at 14), this factor weighs slightly in favor of transfer.

With regard to the public interest factors, practical considerations weigh in favor of transfer, and the remaining factors are neutral. For practical considerations, Segan argues that transfer should not be granted because it would simply shift the burden and inconvenience from Zyga to Segan. (D.I. 33 at 18 (citing *Bergman v. Brainin*, 512 F. Supp. 972, 973 (D. Del.


1981)[4].) In contrast, Zynga argues that practical considerations favor transfer because none of the parties have a presence in Delaware; the majority of the evidence, witnesses, and nonparty companies are located in the Northern District of California; and transfer would reduce the expense and disruption to Zynga's and the nonparty companies' business operations. (D.I. 29 at 15.) The court agrees. While transfer will increase Segan's travel expenses, it will not dramatically increase its litigation costs, or have a disproportionate disruptive effect upon its business operations. Further, transfer to a district where numerous nonparty witnesses reside will reduce public costs. As such, the court believes that the "aggregate litigation costs will be reduced by litigating in California." *Linex Techs.*, 2013 U.S. Dist. LEXIS 1924 at \*22-23 (explaining that practical considerations require an evaluation of the underlying facts unbiased by the defendant's decision to incorporate in Delaware). Accordingly, the court concludes practical considerations of efficiency, expense, and ease favor transfer.

For relative administrative difficulty, the parties cite multiple court statistics.[5] The court finds the factor neutral and notes that this case will be scheduled consistent with the parties' proposal. The local interest factor is neutral because a patent infringement action is more properly described as a national controversy. *See Smart Audio*, 910 F. Supp. 2d at 733-34 (citing

---

[4] The court is puzzled by Segan's reliance upon *Bergman*. The *Bergman* Court granted the defendant's motion to transfer because only two of the plaintiff's witnesses were likely to testify at trial; most of the defendants were located in the transferee district; the transferee court had subpoena power over necessary third-party defendants; and litigation in Delaware would seriously disrupt the defendants' and third-parties' business operations. 512 F. Supp. at 973-75. In short, the *Bergman* facts are analogous to the present case, and thus, compel transfer.

[5] Zynga notes that the District of Delaware had 1000 new patent cases filed in the first nine months of 2013 compared to only 166 in the Northern District of California. (D.I. 35 at 9.) Further, each active district judge in the District of Delaware has an average of 222 active patent cases, compared to 15 cases per active district judge in the Northern District of California.( *Id.*) However, Segan notes that compared to the Northern District of California, Delaware has both a shorter average time for resolution of patent cases (1.05 years compared to 1.28 years) and a shorter time-to trial (2.03 compared to 2.92 years.) (D.I. 33 at 20-21.)

8

*Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 375 (D. Del. 2012)). Similarly, enforceability of the judgment, and public policies of the fora are neutral in this transfer analysis.

## V. CONCLUSION

Considering the *Jumara* factors as a whole, the court believes that Zynga has met its burden of demonstrating that the interests of justice and convenience strongly favor transfer. Notably, only Segan's forum preference weighs against transfer, and that preference was not afforded maximum deference in this case. On the other hand, several factors counsel transfer: the location where the claim arose; the location of relevant books and records; and practical considerations that might make trial easier and less expensive. Additionally, the convenience of witness factor strongly favors transfer because the Northern District of California can exercise subpoena power over most of the nonparty witnesses, but Delaware cannot. Therefore, the court grants Zynga's motion to transfer.

Dated: March 19, 2014

CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SEGAN LLC,                              )
                                       )
        Plaintiff,                     )
                                       )
    v.                                 )        Civil Action No.  11-670-GMS
                                       )
ZYNGA INC.,                            )
                                       )
        Defendant.                     )
                                       )

**ORDER**

IT IS HEREBY ORDERED THAT:

1. The Zynga's, Inc. Motion to Transfer to the Northern District of California (D.I. 28) is GRANTED; and

2. The above-captioned action is transferred to the U.S. District Court for the Northern District of California.

Dated: March __, 2014

CHIEF, UNITED STATES DISTRICT JUDGE